ASBURY PARK AND OCEAN GROVE BANK, BODY CORPORATE, PLAINTIFF, v. HORACE A. STONEHAM, DEFENDANT.

Decided December 23, 1931.

LAWRENCE, C. C. J.   This is a motion in behalf of plaintiff to strike defendant's answer on the ground that it is sham or frivolous.   The suit is on a promissory note of the following tenor:

"Asbury Park, N. J., Apr. 10, 1929.          $14,500.

On demand, after date, I promise to pay to the order of G. P. Farmer Coal & Supply Co., fourteen thousand, five hundred 00/100 dollars, at the Asbury Park and Ocean Grove Bank of Asbury Park.   Value received with interest.

No. . . . . . .          (Signed) HORACE A. STONEHAM."
Endorsed:
G. P. Farmer Coal & Supply Company,
By Edward D. Farmer, Pres.

The defenses set up are that the plaintiff bank did not become the holder of the note in due course, in that it was not negotiated within a reasonable time after its date; that it could not have become the property of the bank through the medium of the indicated endorsement, upon the apparent theory that the president of a corporation has no authority to so endorse and transfer title; and that it was known to plaintiff at the time it received the note that there was an existing agreement between the payee and defendant that if the former demanded payment, it would assign to the latter its right, title and interest in and to any claim or stock interest it might have against or in the Kingsley Arms Company, Incorporated, the owner of a hotel and apartment building in Asbury Park, of which the Kelley Building Company, Incorporated, had been the building contractor.   The allegation is that no such assignment was ever made to defendant.

Plaintiff's motion to strike is on the ground that the matters set up do not present a legal defense to the note.   Defendant's affidavit submitted on the motion sets forth that prior to the execution of the note in suit, defendant had endorsed two notes executed by the Kelley Building Company, Incorporated, one for $10,000 and the other for $4,500; that he received no consideration therefor, to the knowledge

of the G. P. Farmer Coal & Supply Company, and that they were held by the latter company pending an adjustment of the financial affairs of the Kingsley Arms Company, Incorporated, which had been adjudicated a bankrupt.

Subsequently, on April 10th, 1929, a proposed written agreement was presented to defendant which recited the indebtedness of Kingsley Arms Company, Incorporated, to the G. P. Farmer Coal & Supply Company, indirectly incurred through the Kelley Building Company, Incorporated, which had also become insolvent, and that a plan of adjustment of the financial affairs of both corporations had been submitted to the various creditors, wherein and whereby, it was proposed that the creditors, including the G. P. Farmer Coal & Supply Company, were to receive common and preferred stock of the Kingsley Arms Company, Incorporated, or a substituted or affiliated company, in lieu of the payment at that time of their respective claims; thereupon defendant signed the note here involved and received back the two notes previously endorsed by him upon the understanding that the note was to be held by the G. P. Farmer Coal & Supply Company until stock had been issued to that company. The agreement further recited that should the G. P. Farmer Coal & Supply Company demand payment of the note, it would assign to defendant all its right, title and interest in and to any claim or stock interest that it might have against the Kelley Building Company, Incorporated, and the Kingsley Arms Company, Incorporated, to the extent of $14,500.

The affidavit further states that no such assignment was ever made, but that the G. P. Farmer Coal & Supply Company filed claims with the receivers of the Kingsley Arms Company, Incorporated, and the Kelley Building Company, Incorporated, and therefore there is not due $14,500 from defendant on the note, who received no consideration for making the note in suit. It is also said, in the affidavit, that the agreement in question was executed by defendant and the coal and supply company and that the latter was familiar with the transaction, although the execution was not authorized by any resolution of the company. The con-

cluding statement in the affidavit is that plaintiff "had or should have had knowledge of the defenses of deponent [defendant] to any action brought on the said note," and that plaintiff has not acquired title to the note and is not a holder in due course.

Plaintiff's reply affidavit, made by its president, set forth that the note was purchased by it of the payee for value; that it was regular on its face and was not to the bank's knowledge overdue or protested; that it had no knowledge that defendant had executed the note without receiving value (the contrary being set forth therein); that there had been a failure of consideration, or that it was executed in accordance with an agreement of the nature referred to in defendant's affidavit; but that plaintiff purchased the note in the ordinary course of its business, without knowledge or intimation that there were any defenses. It is further stated that it is now the holder for value, and has demanded payment of defendant which has been refused, although the amount thereof is due and unpaid.

It seems clear that defendant's affidavit does not present any valid legal defense to the note in the hands of the plaintiff bank. It merely discloses that he became an accommodation endorser of two prior notes which were surrendered to him when he made the new note. The agreement apparently was that if the payee—G. P. Farmer Coal & Supply Company—demanded payment, as it evidently had a right to do, it would assign to defendant all its right, title and interest in and to any claim or stock interest it might have against or in the two corporations in question, or their affiliate, when organized. It is not even suggested in the affidavit, however, that either of the corporations was ever reorganized, or that a new corporation was formed to take over their interests. It is obvious, therefore, that the coal and supply company had nothing to assign to defendant, beyond its claim filed with the receivers of the corporation. In other words, it is not shown that the purpose of the alleged agreement was ever accomplished.

Assuming, consequently, that the plaintiff bank had not

become a holder in due course, thus letting in any defenses defendant may legitimately have had, or that the note had not been negotiated within a reasonable time after its issue, with like result, the defenses sought to be set up appear to be without substance. Finally, the claim made that the president of the coal and supply company had no inherent authority to endorse the note and dispose of it to the plaintiff bank, as indicated by the manner in which the endorsement appears, runs counter to the rule that the general authority of the president of a business corporation is sufficient to warrant him in collecting outstanding accounts and in selling the accounts for their face value. *Cogan* v. *Conover Manufacturing Co.,* 69 *N. J. Eq.* 816.

The answer will be stricken as sham. A rule to that effect may be submitted. The application for summary judgment must be made, however, to the Supreme Court, or one of the justices thereof, in accordance with the practice.