587 A.2d 305

LOUIS SALEMY, PLAINTIFF–RESPONDENT, v. JOHN S. DIAB AND HARVEY GOLDEN, DEFENDANTS–APPELLANTS, AND HARVEY GOLDEN, THIRD–PARTY PLAINTIFF, v. LYNWOOD R. ANDERSON, JOHN S. DIAB AND JOHN DOE, ESQ., THIRD–PARTY DEFENDANTS.

Superior Court of New Jersey
Appellate Division

Submitted January 15, 1991—Decided March 4, 1991.

Before Judges BRODY, GRUCCIO and D'ANNUNZIO.

*Brigiani Gelzer Cohen & Schneider,* attorneys for appellant Harvey Golden (*Elias L. Schneider,* on the brief).

*Lombardi & Lombardi,* attorneys for appellant John S. Diab, relied on the brief filed by appellant Harvey Golden.

*Liston, Hensel & Pinizzotto,* attorneys for respondent Louis Salemy (*Joseph Pinizzotto,* on the brief).

The opinion of the court was delivered by

BRODY, J.A.D.

The trial judge held that plaintiff is a holder in due course of a $75,000 note payable August 10, 1989. Defendants Diab and Golden, makers of the note, had made the note payable to third-party defendant Anderson who assigned it to plaintiff on May 25, 1989, to satisfy Anderson's $70,000 antecedent debt to plaintiff and plaintiff's wife.[1] In return for the note, plaintiff's attorney sent to Anderson's attorney a written release[2] of

---

[1] Anderson made two notes, both payable November 19, 1987, to evidence the debt. One note, in the amount of $40,000, was made payable to plaintiff; the other, in the amount of $30,000, was made payable to plaintiff's wife.

[2] Only plaintiff's wife executed the release. Plaintiff testified at depositions that he and his wife had been married "many years" and that they spoke for

Anderson's debt with a covering letter containing the following instruction: "Please hold [the release] in escrow pending my client's receipt of the sum of $75,000." Diab and Golden have raised several defenses to the note that are not available if plaintiff is a holder in due course.

Defendants argue that plaintiff is not a holder in due course. The precise issue they raise is whether plaintiff gave value for the note in view of the conditional nature of his release of Anderson's debt. Judge Lawrence Weiss granted plaintiff's motion for partial summary judgment, holding that plaintiff had given value.[3] The judge relied on *Altex Aluminum Supply Co. v. Asay*, 72 *N.J.Super.* 582, 585, 178 *A.*2d 636 (App.Div.1962), a case governed by the Negotiable Instruments Law, where we said:

> It is settled law that a party taking a negotiable instrument in payment of, or as security for, an antecedent debt, is a holder in due course. *Citrin v. Tansey*, 107 *N.J.L.* 368 [153 *A.* 523] (E. & A. 1931). *Cf. Colozzi v. Bevko, Inc.*, 17 *N.J.* 194, 209 [110 *A.*2d 545] (1955). This is so even though satisfaction of the antecedent debt is conditioned on actual payment of the note. *Citrin v. Tansey, supra; Ahern v. Towle*, 310 *Mass.* 695, 39 *N.E.*2d 561 (Sup.Jud.Ct. 1942); *Brannan, Negotiable Instruments Law* (7th ed. 1948), § 25, pp. 515–516.

Defendants contend that a change in the definition of value brought about by adoption of the Uniform Commercial Code, *N.J.S.A.* 12A:1–101 *et seq.*, requires a different result. We disagree and affirm.

---

each other. None of the parties questions the fact that plaintiff's wife is not a party.

[3]The judgment adjudicates only plaintiff's claim against defendants. Pursuant to *R.* 4:42–2, Judge Weiss certified that the judgment be treated as final. Defendants' claims against third-party defendant Anderson have not been adjudicated.

Value is defined in *N.J.S.A.* 12A:3–303, which provides:

A holder takes the instrument for value

(a) to the extent that the agreed consideration has been performed or that he acquires a security interest in or a lien on the instrument otherwise than by legal process; or

(b) when he takes the instrument in payment of or as security for an antecedent claim against any person whether or not the claim is due; or

(c) when he gives a negotiable instrument for it or makes an irrevocable commitment to a third person.

These definitions are disjunctive. Plaintiff took the note for value as defined in section 3–303(b), whose wording is essentially identical to our courts' construction of the Negotiable Instruments Law.

Defendants mistakenly direct our attention to the section 3–303(a) definition, whose wording has the effect of withholding holder-in-due-course status from a holder who has taken a negotiable instrument in return for making an unperformed promise. Uniform Commercial Code Comment 3 to section 3–303 explains the new meaning given to the section 3–303(a) definition:

Paragraph (a) resolves an apparent conflict between the original Section 54 and the first sentence of the original Section 25 [of the Negotiable Instruments Law], by requiring that the agreed consideration shall actually have been given. An executory promise to give value is not itself value, except as provided in paragraph (c). The underlying reason of policy is that when the purchaser learns of a defense against the instrument or of a defect in title he is not required to enforce the instrument, but is free to rescind the transaction for breach of the transferor's warranty (Section 3–417). There is thus not the same necessity for giving him the status of a holder in due course, cutting off claims and defenses, as where he has actually paid value. A common illustration is the bank credit not drawn upon, which can be and is revoked when a claim or defense appears.

Defendants confuse the section 3–303(a) definition of value with the section 3–303(b) definition. At first blush there appears to be little difference between a promisor's unexecuted promise of performance, such as a promise to extend credit, and a creditor's release of an antecedent debt. In both cases the holder may sustain no loss if the negotiable instrument is dishonored. But that is not always so. A holder-promisor who has not yet performed before the dishonor has lost nothing, but a holder-creditor who has released a debt before the dishonor has lost an earlier opportunity to collect it. It is difficult, if not

impossible, in some cases for a creditor to measure the loss attributable to forbearance. Section 3–303(b) therefore protects the creditor in all cases by treating the release of an antecedent debt as the giving of value.

■ Another cause of confusion arises from the conditional nature of the release in this case. Section 3–303(b) applies when the negotiable instrument is taken "in payment" of an antecedent claim. Defendants contend that because the release given here expressly postpones payment of the antecedent claim until the instrument is paid, plaintiff never treated the debt as paid and therefore did not give value.

The argument is flawed because, unless the parties have otherwise agreed, whenever a holder takes a negotiable instrument in payment of an antecedent debt, the underlying obligation is restored should the instrument be dishonored. *N.J. S.A.* 12A:3–802(1)(b).[4] Thus the condition in the release adds nothing to the rights plaintiff had even if the release had been unconditional. If a holder taking a negotiable instrument in payment of an antecedent debt lost his status as a holder in due course because his release of the debt was conditioned upon payment of the instrument, section 3–303(b) would be rendered a nullity.

Defendants find support for their argument in opinions from other jurisdictions. *See State Bank of Broonton v. Am. Nat. Bank,* 266 *N.W.*2d 496 (Minn.1978); *Wilson Supply Co. v. West Artesia Transmission Co.,* 505 *S.W.*2d 312 (Tex.Civ.App.1974), *aff'd* 511 *S.W.*2d 261 (Tex.1974); *Halbert v. Horton,* 29 *Mich. App.* 208, 185 *N.W.*2d 76 (1970). However, the holdings in those cases have been criticized as "of questionable merit"

---

[4]Section 802(1)(b) provides in relevant part:

Unless otherwise agreed where an instrument is taken for an underlying obligation ... the obligation is suspended pro tanto until the instrument is due or if it is payable on demand until its presentment. If the instrument is dishonored action may be maintained on either the instrument or the obligation; ...

because they overlook the effect of section 3–802(1)(b). Hawkland & Lawrence, *Uniform Commercial Code Series*, § 3–303:06 (1990).

Affirmed.